# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | | |
|---|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) | | |
| Plaintiff, | ) | Civil Action No. 7:13-cv-00342 | |
| v. | ) ) | | |
| MINOR DOE, *et al.*, | ) ) | By: | Michael F. Urbanski United States District Judge |
| Defendants. | ) | | |

## MEMORANDUM OPINION

In this declaratory judgment action, Scottsdale Insurance Company ("Scottsdale") asks the court to find that it has no duty to defend or indemnify its insured, John Edward Thomas (trading as American Freestyle Karate ("AFK")), or Thomas' employee, Craig Manges, Jr., in a lawsuit brought by Minor Doe and her parents, Mother Doe and Father Doe, in state court. In Count I of the state court action, the Does allege that Manges engaged in battery by sexually molesting Minor Doe at an AFK summer camp in 2008. Count II alleges battery against Thomas, asserting that Manges was Thomas' employee and was acting within the scope of his employment. Count III alleges that Thomas negligently retained Manges as an employee after learning of an earlier sexual assault. Count IV alleges that Thomas was negligent in failing to report the earlier assault to authorities. The parties have filed cross motions for summary judgment.

For the reasons set forth below, the court concludes that there is no insurance coverage for the intentional torts alleged in Counts I and II, but coverage exists for the negligence alleged in Counts III and IV. Despite the court's conclusion that coverage exists under the Scottsdale policy for Counts III and IV, the court must defer concluding that a duty to defend or indemnify these claims exists until certain factual issues are resolved relating to Scottsdale's defenses that Thomas breached the policy by not providing timely notice and that the alleged molestation did not take

place during the policy period. As the court concludes herein, those issues must be resolved by a jury. As such, the court will **DENY** each of the pending motions for summary judgment. The remaining issues to be decided by a jury are whether Thomas notified Scottsdale of the claims arising from the underlying lawsuit as soon as practicable and whether the alleged molestation took place during the insurance policy period.

I.

Two coverage parts of the Scottsdale insurance policy are at issue: the Commercial General Liability ("CGL") part and the Errors and Omissions ("E&O") part. The CGL part provides coverage for "bodily injury" arising from an "occurrence." Scottsdale Insurance Policy, Dkt. No. 1-1, at 13. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person." Id. at 25. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 26. The E&O part provides coverage for "any negligent act, error or omission while performing those services" of a martial arts studio. Id. at 41. Both coverage parts are subject to certain exclusions specified within the policy. The CGL part contains an exclusion for bodily injury "expected or intended from the standpoint of the insured." Id. at 14. The E&O part excludes any "[i]njury arising out of a dishonest, fraudulent, malicious or criminal act by any insured." Id. at 36. The policy also excludes coverage for punitive or exemplary damages arising out of any lawsuit against the insured.[1] Id. at 51.

Under the CGL part of the insurance policy, Scottsdale assumes the following obligations:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

---

[1] Defendants do not contend that the claim for punitive damages is covered under the Scottsdale policy.

2

Id. at 13.[2]

The state court complaint alleges that in late spring or early summer 2008, the Doe parents enrolled their daughter in an AFK summer camp providing martial arts lessons and other activities for children. Doe Compl., Dkt. No. 1-2, ¶¶ 5–7. Manges had been employed by AFK as an instructor for several years prior to 2008. The complaint alleges that at some point in the past, a minor girl claimed that Manges had unlawful sexual contact with her while serving as her instructor at AFK. Id. ¶¶ 10–11. The complaint alleges that despite learning of the minor girl's claims, Thomas continued to employ Manges and did not investigate or report the incident. Id. ¶ 12.

The Does allege that while attending the camp in 2008, Minor Doe lost her glasses, and Manges accompanied her into a room to look for them. Id. ¶ 17. The complaint details the subsequent abuse:

> While in the room, Defendant Manges grabbed [Minor Doe,] held [Minor Doe] up against a stack of floor mats, and began to rub his crotch area back and forth against the crotch area of [Minor Doe]. The rubbing lasted for approximately five to ten minutes and both Defendant Manges and [Minor Doe] were fully clothed at the time of this incident. … [Minor Doe] did not consent to Defendant Manges grabbing her, holding her up against the stack of mats, and rubbing his crotch area back and forth against her crotch area.

Id. ¶¶ 18–19. The complaint also outlines other incidents of unlawful sexual contact with Minor Doe and other juvenile participants of the summer camp. Id. ¶¶ 13–15, 21–23. The Does assert that Manges was acting within the scope of his employment when he committed each of the alleged

---

[2] The E&O part of the insurance policy contains similar language, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as "damages" as a result of an "error or omission" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" for an "error or omission" to which this insurance does not apply."

Id. at 35.

3

acts of sexual abuse.  Id. ¶¶ 15, 20, 23.  As a result of this sexual abuse, Minor Doe alleges that she has suffered severe emotional pain and psychological injury causing her to inflict cutting wounds upon herself.  Id. ¶ 27.

Although he was served with the complaint in late 2012, Thomas waited several months to notify Scottsdale of the suit.  After denying the claim for failing to provide timely notice, Scottsdale filed this declaratory judgment action, naming Manges, Thomas and the Does as defendants.  On August 14, 2013, the Does answered and filed a counterclaim for declaratory judgment asserting that the underlying complaint is covered by the policy.  Dkt. No. 3.  Thomas' answer included a similar counterclaim requesting a declaration of coverage under the insurance contract.  Dkt. No. 6.  Manges has not responded to Scottsdale's complaint.

## II.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236–37 (4th Cir. 1995).  Whether a fact is material depends on the relevant substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Nguyen, 44 F.3d at 237.  If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  "All reasonable inferences drawn from the evidence must be

4

viewed in the light most favorable to the party opposing the motion," but "[a] mere scintilla of evidence supporting the case is insufficient." Nguyen, 44 F.3d at 237.

**III.**

The parties agree that Virginia law governs in this diversity suit. Under Virginia law, "it is a well-established principle … that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." AES Corp. v. Steadfast Ins. Co., 283 Va. 609, 616–17, 725 S.E.2d 532, 535 (2012). Because the analysis compares the four corners of the insurance policy with the four corners of the underlying complaint, this methodology is commonly referred to as the "eight corners rule." Id., 283 Va. at 617, 725 S.E.2d at 535.

Virginia courts "interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." Transcon. Ins. Co. v. RBMW, Inc., 262 Va. 502, 512, 551 S.E.2d 313, 318 (2001). Accordingly, the court will "give the [clear and unambiguous] language its plain and ordinary meaning and enforce the policy as written." Fed. Hill Homeowners Ass'n, Inc. v. Cmty. Ass'n Underwriters of Am., Inc., 384 F. App'x 209, 212 (4th Cir. 2010). However, if the court "find[s] ambiguity 'and the intentions of the parties cannot be ascertained, the policy must be construed strictly against the insurer and liberally in favor of the insured.'" Id. (citation omitted).

In Virginia, "[t]he insured has the burden to prove coverage while 'the insurer bears the burden of proving that an exclusion applies.'" Fed. Hill Homeowners, 384 F. App'x at 212 (citation omitted); see also Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 270, 475 S.E.2d 264, 266 (1996) (stating that "[e]xclusionary language in an insurance policy is to be construed most strongly against the insurer"); but see PBM Nutritionals, LLC v. Lexington Ins. Co.,

5

283 Va. 624, 634, 724 S.E.2d 707, 713 (2012) ("[W]here the exclusion is not ambiguous, there is no reason for applying the rules of contra proferentem or liberal construction for the insured.").

An insurer's duty to defend "is broader than [the] obligation to pay, and arises whenever the [underlying] complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Va. Elec. & Power, 252 Va. at 268, 475 S.E.2d at 265. The court decides whether the provider has a duty to defend "by comparing what [the state court plaintiff] *has alleged* in the state court action with the language of the [provider's] insurance policy." Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004). Thus, the court takes the underlying allegations as true in determining the insurer's duty to defend.

If there is no duty to defend, there can be no duty to indemnify because each of the allegations in the underlying complaint, if proven true, would fall outside of the policy's coverage. Id. But, if there is a duty to defend, the court cannot determine the duty to indemnify until the underlying state court action is resolved because "an insurer's duty *to indemnify* will depend on resolution of facts in the complaint" against the insured. Id.; see also Builders Mut. Ins. Co. v. Futura Grp., L.L.C., 779 F. Supp. 2d 529, 535 (E.D. Va. 2011) ("[T]he legal analysis necessary for the duty to indemnify determination cannot take place until *after* the ultimate factual findings are made in the state court suit."); Pa. Nat. Mut. Cas. Ins. Co. v. Block Roofing Corp., 754 F. Supp. 2d 819, 827 (E.D. Va. 2010) (stating that "only after the state court has made its decision will this Court be able to evaluate whether" the insurer has a duty to indemnify its insured).

## IV.

With regard to CGL coverage, Scottsdale argues that the state court complaint does not allege either an "occurrence" or "bodily injury" as those terms are defined in the Scottsdale policy.

6

## A.

Scottsdale first argues that the state court complaint does not allege an "occurrence" under the terms of its policy, focusing on the intentional nature of Manges' alleged abuse of Minor Doe. In Virginia, "[a]n intentional act is neither an 'occurrence' nor an 'accident' and therefore is not covered by the standard policy." Utica Mut. Ins. Co. v. Travelers Indem. Co., 223 Va. 145, 147, 286 S.E.2d 225, 226 (1982); see also Travelers Indem. Co. v. Obenshain, 219 Va. 44, 47, 245 S.E.2d 247, 249 (1978) (finding no duty to defend where a complaint alleged only intentional torts). As noted above, the CGL part of Thomas' insurance policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Scottsdale Insurance Policy, Dkt. No. 1-1, at 26. This definition is a typical CGL policy provision, and Virginia courts have a long history of construing such language. See AES, 283 Va. at 614, 725 S.E.2d at 534; S.F. v. W. Am. Ins. Co., 250 Va. 461, 464, 463 S.E.2d 450, 452 (1995); Selleck v. New Hampshire Ins. Co., 4 Va. Cir. 491, at *2 (Alleghany Cty. Cir. Ct., Oct. 8, 1979) (holding that assault and battery does not constitute an "occurrence" under the aforementioned definition).

Here, Counts I (Battery – Manges) and II (Battery – Thomas) of the state court complaint are entirely based on Manges' intentional acts:

> In forcing [Minor Doe] to place her face into the spot on Defendant Manges's body between Defendant Manges's waistline and Defendant Manges's crotch, in holding [Minor Doe] up against a stack of mats and rubbing his crotch area against the crotch area of [Minor Doe] and in placing his hand between the legs of [Minor Doe] and rubbing the genitals of [Minor Doe], Defendant Manges in each such instance deliberately and intentionally made or caused contact with the person of [Minor Doe].

Doe Compl., Dkt. No. 1-2, ¶¶ 37, 44. As such, these allegations fall outside of the definition of an "occurrence." Likewise, these intentional acts do not constitute "any negligent act, error or omission," and therefore, they also fall outside of E&O coverage. In short, the Scottsdale policy does not cover the intentional acts alleged in Counts I and II of the state court complaint.

7

On the other hand, the allegations in Counts III and IV of the underlying complaint are founded in negligence. In those counts, the Does claim that Thomas was negligent by retaining Manges and by not reporting his abuse of other children. Scottsdale argues nonetheless that no coverage exists for these negligence claims because they are based upon Manges' intentional sexual assault, relying principally upon the Supreme Court of Virginia's decision in <u>AES Corp. v. Steadfast Insurance Co.</u>, 283 Va. 609, 725 S.E.2d 532 (2012).

In <u>AES</u>, an insurer brought a declaratory judgment action in state court against its insured, an energy company operating in northern California. The insurer sought a declaration that it had no duty to defend the energy company in a federal lawsuit that was brought by an Alaskan village. The village claimed that the energy company, along with other defendants, had damaged the village by causing global warming through emission of greenhouse gases. Advancing negligence claims, the village asserted that the energy company had "intentionally emit[ted] millions of tons of carbon dioxide and other greenhouse gases into the atmosphere annually." <u>Id.</u>, 283 Va. at 614, 725 S.E.2d at 534. Moreover, the village alleged that the energy company "'knew or should have known of the impacts of its emissions' of carbon dioxide, but that 'despite this knowledge' … [the energy company] 'continued its substantial contributions to global warming.'" <u>Id.</u>

In analyzing these allegations, the Supreme Court of Virginia noted:

> For coverage to be precluded under a CGL policy because there was no occurrence, it must be alleged that the result of an insured's intentional act was more than a possibility; it must be alleged that the insured subjectively intended or anticipated the result of its intentional act or that objectively, the result was a natural or probable consequence of the intentional act.

<u>Id.</u>, 283 Va. at 618, 725 S.E.2d at 536. Because the village alleged that the energy company acted intentionally and knew or should have known of the consequences of its actions, the alleged conduct did not constitute an "occurrence" under the energy company's insurance policy. <u>Id.</u>

8

Scottsdale asserts that, under the reasoning in AES, the Does' allegations "that the sexual assault perpetrated against their daughter resulted from 'negligence' of one sort or another by Defendant Thomas or Defendant Manges does not transform the alleged willful, malicious attack into an 'occurrence.'" Scottsdale's Mem. in Supp. of Mot. for J. on the Pleadings, Dkt. No. 23, at 11. But the holding in AES does not squarely fit the allegations in this case. That is because, unlike in AES, the Does allege both intentional (Counts I and II) and negligent (Counts III and IV) conduct. In essence, Scottsdale asks the court to conflate the intentional conduct alleged in Counts I and II with the negligent conduct alleged in Counts III and IV. This the court cannot do. In straining to apply AES to this case, Scottsdale misses the point of Counts III and IV of the Does' complaint. The Does do not assert in Counts III and IV that Thomas intentionally did anything to harm Minor Doe. Rather, the conduct alleged is negligent retention and negligent failure to report. The court is required to treat each fact and instance of unlawful conduct detailed in the underlying complaint as having the potential to qualify as an "occurrence." See Va. Elec. & Power, 252 Va. at 268, 475 S.E.2d at 265 (noting that the duty to defend "arises whenever the [underlying] complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy").

Scottsdale also asserts that "[t]here is no case in which Virginia law has been applied to a commercial general liability policy … so as to require an insurer to defend or indemnify an employee or employer in suits involving intentional sexual battery." Scottsdale's Rebuttal Mem. in Supp. of Mot. for J. on the Pleadings, Dkt. No. 26, at 1–2. Scottsdale's assertion overlooks the decision of the Supreme Court of Virginia in S.F. (Jane Doe) v. West American Insurance Co., 250 Va. 461, 463 S.E.2d 450 (1995).

In West American, a resident manager of an apartment complex molested seven infants who lived in the building. The infants' parents sued the property owner, alleging that the owner

9

negligently retained the resident manager and "knew or should have known that [the resident manager] had a history of criminal behavior, was a known child molester, [and] had been convicted of child molestation." Id., 250 Va. at 463, 463 S.E.2d at 451. After the trial court entered judgment against the property owner for negligent retention, the property owner's liability insurer brought a separate declaratory judgment action. The insurer sought to establish that only one "occurrence" had taken place, despite the several incidents of sexual molestation, thus limiting the available coverage to $1 million instead of the $7 million that the parents requested (one million for each child who suffered injuries).

The Supreme Court of Virginia found the term "occurrence" to be ambiguous, reasoning as follows: "an occurrence could be deemed as any one of the following: the insureds' negligent hiring of [resident manager], or the insureds' negligent supervision of [resident manager], or the insureds' negligent retention of [resident manager]." Id., 250 Va. at 465, 463 S.E.2d at 452. Applied to the allegations in this case, such reasoning requires the court to conclude that the negligent retention and negligent failure to report alleged in Counts III and IV of the Does' complaint constitute "occurrences" under the Scottsdale policy.

### B.

Scottsdale also contends that the Does' complaint does not implicate coverage under the Scottsdale policy because it does not allege a covered "bodily injury." The Scottsdale policy defines a "bodily injury" as "bodily injury, sickness or diseases sustained by a person, including death resulting from any of these at any time." Scottsdale Insurance Policy, Dkt. No. 1-1, at 25. Scottsdale contends that the complaint alleges only psychological injury, which does not fall within the CGL coverage. The court disagrees for two reasons.

First, the Does' complaint alleges physical sexual assault on Minor Doe. The Does' complaint states that "Manges grabbed [Minor Doe,] held [Minor Doe] up against a stack of floor

10

mats, and began to rub his crotch area back and forth against the crotch area of [Minor Doe]." Doe Compl., Dkt. No. 1-2, ¶ 18. The complaint also details another incident of unlawful contact: "Manges grabbed [Minor Doe] while no one else was looking and placed his hand between [Minor Doe's] legs. Defendant Manges then began to rub on [Minor Doe's] genitals" without her consent. Id. ¶ 21. According to the complaint, Manges physically grabbed, held, touched, and rubbed Minor Doe.

In Rockingham Mutual Insurance Co. v. Davis, 58 Va. Cir. 466, at *3 (Rockingham Cty. Cir. Ct., April 26, 2002), the court rejected the argument that such a sexual assault does not constitute bodily injury. The court reasoned:

> Although it may seem a simplistic approach, it is apparent that when a body part is "grabbed" and "pain" is caused by the grabbing, the physiological cause of the "pain" has to be the compression of nerves, tissues, and muscles that results from the "grabbing." … There is no requirement of permanency or external manifestation; it is sufficient if physical pain is experienced.

The court found that the claimant's alleged physical pain that resulted when the perpetrator forcefully grabbed her arm qualified as a bodily injury in the context of a sexual assault. Id. While the Does' complaint does not expressly use the words "physical pain," it alleges that an adult male grabbed a minor child and held her up against a stack of mats while sexually assaulting her. There is no meaningful distinction between the allegations in the Does' complaint—a physical assault in which the assailant grabbed and held down a minor, rubbing her crotch area and genitals—and the allegations in the Rockingham Mutual case. Given Manges' use of physical force to grab and restrain Minor Doe while he sexually abused her, it is impossible to conclude that such a physical assault does not constitute a "bodily injury."

Similar cases from other jurisdictions hold consistently. In Allstate Insurance Co. v. McCranie, 716 F. Supp. 1440 (S.D. Fla. 1989), a homeowner's insurer, faced with a claim that its insured sexually molested a minor, sought a declaratory judgment that the insurance policy did not

11

cover the injuries stemming from the molestation. Id. at 1443. Allstate argued the minor suffered from emotional and psychological—not bodily and physical—injuries. Id. The district court disagreed, suggesting that "initial physical contact" makes sexual molestation cases different from other "bodily injury" cases. Id. In particular, the sexual abuse "entailed physical contact" against the minor's "person." Id. Further, "[t]he resulting emotional injuries can be traced to the sexual abuse, which was the result of physical contact." Id. The court concluded that the minor's injuries were "bodily injuries" under the insurance policy. Id.

Similarly, in Wayne Township Board of School Commissioners v. Indiana Insurance Co., 650 N.E.2d 1205 (Ind. Ct. App. 1995), a school principal sexually molested a minor in his office by having her sit on his lap and forcing her to touch his genitals through his pants. Id. at 207. When the school's insurance provider denied coverage, the school system sued. Id. The court noted that the principal "physically intruded upon [the minor's] person" by "physically seiz[ing] control of her body." Id. at 211. The court concluded that a "bodily injury" includes "a physical violation of the child's person, whether it involves taking hold of a child and forcing the child's hand onto one's body . . . or a more heinous violation of the child's person." Id. Consistent with the holdings in these cases, the allegations in the Does' state court complaint that Manges grabbed Minor Doe, held her against mats and sexually abused her constitutes a "bodily injury" under the Scottsdale policy.

Second, the state court complaint alleges that Minor Doe sustained physical injuries as a result of Manges' sexual assault. In paragraph 27, the Does allege that Minor Doe became depressed and began cutting herself following Manges' sexual assault. A number of courts have found bodily injury coverage to attach where, as here, the claimed psychological injury is accompanied by physical manifestations. See Allstate Ins. Co. v. Wagner-Ellsworth, 344 Mont. 445, 459 (2008) ("We thus join other courts which have construed the term 'bodily injury' within an insurance policy to include a mental or psychological injury that is accompanied by physical manifestations."); see also Voorhees

12

v. Preferred Mut. Ins. Co., 128 N.J. 165, 177 (1992) ("Even a number of jurisdictions denying coverage for emotional distress unaccompanied by physical symptoms have noted that if plaintiff had alleged physical symptoms, the duty to defend would have been triggered."). Indeed, in Wayne Township, the court concluded that self-inflicted physical injuries as a result of molestation were bodily injuries covered under the insurance policy in that case. Wayne Township, 650 N.E.2d at 1211. Thus, the allegation that Minor Doe began physically cutting herself as a result of the sexual abuse, is sufficient to satisfy the "bodily injury" requirement of the Scottsdale policy.

Scottsdale urges the court to adopt the reasoning of the district court in American & Foreign Insurance Co. v. Church Schools in Diocese of Virginia, 645 F. Supp. 628, 632 (E.D. Va. 1986). There, an eleven year old student fell out of her chair in art class and "[i]n the course of getting up, her art teacher, defendant Archinal, squeezed her buttocks in a sexually suggestive manner." Id. at 630. A student's parent sued the school, alleging that a school administrator "humiliated [the student] at a schoolwide assembly by giving a sermon about how a jealous little school girl had ruined the life of a schoolteacher by falsely claiming sexual abuse." Id. at 630. The parent's complaint characterized the unlawful touching as "bodily contact," with little other supporting description. Id. at 362. When the school's insurance company disputed that these allegations did not constitute a "bodily injury," the court held that "[i]n giving the 'bodily injury' coverage its plain meaning, it simply does not cover the [student and her parent's] claim for purely emotional injury." Id.

The factual setting in Church Schools is a far cry from that alleged in this case. Unlike the mere touching or "bodily contact" alleged in Church Schools, the Does' complaint alleges sexual abuse perpetrated upon a minor by brute physical force resulting in psychological harm with physical manifestations. Moreover, a substantial portion of the psychological injury alleged in Church Schools arose out of the humiliating sermon, and the court primarily relied on case law involving

13

emotional damages arising from "non-touching" instances.  See Rolette Cnty. v. W. Cas. & Sur. Co., 452 F. Supp. 125, 130 (D.N.D. 1978); St. Paul Fire & Marine Ins. Co. v. Campbell Cnty. Sch. Dist., 612 F. Supp. 285, 287–88 (D.Wyo. 1985).  In short, the facts of Church Schools do not begin to resemble the forcible sexual abuse alleged in this case.  The allegations of forcible sexual assault resulting in psychological harm, including physical cutting, fall with the policy definition of "bodily injury."

## V.

The allegations in Counts III and IV of the underlying complaint also invoke Scottsdale's duty to defend under the E&O part of the insurance policy.  As noted above, the E&O part covers "any negligent act, error or omission while performing those services" of a martial arts studio.  Scottsdale Insurance Policy, Dkt. No. 1-1, at 41.  Plainly, the allegations in Counts III and IV are negligent acts or omissions falling within this coverage.

Nonetheless, Scottsdale contends that a policy exclusion applies to bar E&O coverage for Count IV, referencing that portion of the policy that excludes coverage for "injury arising out of a dishonest, fraudulent, malicious or criminal act by any insured."  Id. at 36.  Scottsdale argues that "[t]he conduct alleged in the Complaint on the part of Thomas in that Thomas failed to report the allegations of abuse to the appropriate authorities, constitutes a criminal act and a violation of Va. Code §§ 63.2-1508 and -1509."  Complaint, Dkt. No. 1, ¶ 72.

Virginia Code § 63.2-1509 specifies that certain categories of persons are required to report child abuse to authorities and imposes a fine for failing to do so.  Scottsdale's argument, and indeed the allegations of Count IV of the state court complaint, ignore the fact that in 2008, at the time the Does allege Thomas was made aware of Manges' conduct, Thomas had no reporting obligation under Virginia law.  In 2012, the Virginia General Assembly added two categories of persons apropos to Thomas to the list of persons required to report sexual abuse.  The categories added in

14

2012 include athletic coaches, directors, volunteers or other employees of a private sports organization or team and administrators or employees of public or private day camps, youth centers and youth recreation programs. Va. Code §§ 63.2-1509(a)(16)–(17).

As the reporting requirements for sports organizations or camps did not come into effect until some four years after plaintiff alleges Thomas was required to report Manges' abuse, they have no application to this case. The Does also allege that Thomas had a reporting requirement under §§ 63.2-1509(A)(6) and (11), but these provisions concerning persons providing child care or organizations responsible for the care, custody or control of children cannot be read so broadly as to apply to Thomas. As there was no statute in existence in 2008 requiring Thomas to report Manges' conduct, there is no basis upon which to apply the criminal exclusion in the E&O part of the Scottsdale policy.

Given the court's conclusion that Va. Code § 63.2-1509 did not impose any reporting obligation on Thomas in 2008, the court does not believe that Count IV states a claim against Thomas under Virginia law. Of course, the ultimate resolution of that issue is for the Circuit Court for the City of Salem. At this procedural juncture, therefore, the court concludes that the exclusion sought by Scottsdale is not applicable and that the Scottsdale policy covers the negligence alleged in Counts III and IV of the state court complaint.

## VI.

Given this conclusion, there are two factual issues that remain to be resolved before judgment can be rendered in this case. They are: (1) whether Thomas breached the insurance policy by failing to provide timely notice to Scottsdale; and (2) whether the negligent conduct alleged in Counts III and IV occurred during the policy period, June 21, 2007 to June 21, 2008.

Scottsdale asserts that Thomas and the Does are not entitled to have a jury resolve these factual issues, relying on one case, In re Lockheed Martin Corp., 503 F.3d 351, 358–59 (4th Cir.

15

2007). In Lockheed, a dispute arose between a shipowner and an insurer over coverage for a ship damaged at sea. The insurer filed a declaratory judgment action under the admiralty jurisdiction of the court. The insurer contended that because the suit arose in admiralty, no jury was available. The Fourth Circuit disagreed, noting that a court considering this question should look beyond the declaratory judgment vehicle to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy.

In Virginia, the law is well-established that the issue of whether timely notice is given to an insurer "is usually a question for the jury." Mason & Dixon Lines, Inc. v. U.S. Cas. Co., 199 Va. 221, 225, 98 S.E.2d 702, 705 (1957); Nationwide Mut. Fire Ins. Co. v. Overstreet, 568 F. Supp. 2d 638, 644 (E.D. Va. 2008). Following the Fourth Circuit's admonition in Lockheed, there is nothing in the declaratory judgment remedy which precludes resolution of the factual issues in this case by a jury. As such, the two factual issues identified above will be submitted to the jury.

An appropriate Order will be entered this day.

Entered: October 30, 2014

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge